1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11   COLLEGENET, INC., a Delaware   )
     corporation,                   )
12                                  )
                        Plaintiff,  )   Nos. CV-02-484-HU (LEAD CASE)
13                                  )        CV-02-1359-HU
            v.                      )
14                                  )
     APPLYYOURSELF, INC., a         )   OPINION & ORDER
15   Delaware corporation,          )
                                    )
16                      Defendant.  )
                                    )
17   ─────────────────────────────────

18   John D. Vandenberg
     Scott E. Davis
     Kristin L. Cleveland
19   KLARQUIST SPARKMAN, LLP
     121 S.W. Salmon Street, Suite 1600
20   Portland, Oregon 97204

21   Robert A. Shlacter
     STOLL STOLL BERNE LOKTING & SHLACTER, P.C.
22   209 S. W. Oak, Suite 500
     Portland, Oregon 97204
23
             Attorneys for Plaintiff
24
     Kathleen C. Bricken
25   GARVEY SCHUBERT BARER
     121 S.W. Morrison Street
26   Portland, Oregon 97204-3141

27   / / /

28   / / /


     1 - OPINION & ORDER

Lawrence E. Carr III
Raymond C. Jones
Timothy Feely
CARR, MORRIS & GRAEFF, P.C.
1120 G Street, N.W., Suite 930
Washington, D.C. 20005

Attorneys for Defendant

HUBEL, Magistrate Judge:

Following a jury verdict in plaintiff's favor and the entry of final judgment along with injunctive relief, defendant moves for judgment as a matter of law (JMOL), or alternatively a new trial, on the issues of non-infringement of the '042 patent and lost profits damages. Defendant also moves for a stay of enforcement of the judgment and the injunctive relief pending resolution of its JMOL motions. Plaintiff moves to strike defendant's JMOL motions for failure to raise the motions at the close of all the evidence in the case.

For the reasons explained below, I construe plaintiff's motion to strike as a partial opposition on procedural grounds to defendant's JMOL/new trial motions. I deny defendant's JMOL/new trial motion directed to lost profits, and I grant defendant's motion to stay.

I.   Plaintiff's Motion to Strike Defendant's JMOL Motions

Federal Rule of Civil Procedure 50(a)(2) provides:

> Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed. R. Civ. P. 50(a)(2). Rule 50(b) provides:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding

2 - OPINION & ORDER

the legal questions raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment - and may alternatively request a new trial or join a motion for a new trial under Rule 59. . . . .

Fed. R. Civ. P. 50(b).

The Federal Circuit will hear any appeal in this case.  It applies its own precedent to patent law issues, but defers to regional circuit law on procedural issues, including the requirement of Rule 50 for renewing a JMOL motion.  Shockley v. Arcan, Inc., 248 F.3d 1349, 1358 (Fed. Cir. 2001).  Thus, Ninth Circuit law applies to the issue raised by plaintiff's motion to strike.

As recently explained by the Ninth Circuit:

Federal Rule of Civil Procedure 50 requires that a motion for JMOL be made at the close of all the evidence in order to be renewed following entry of judgment.  This Court strictly applies the rule that Rule 50 allows complete waiver if an objection is not properly made.  See, e.g., Janes v. Wal-Mart Stores, Inc., 279 F.3d 883, 887 (9th Cir. 2002) (refusing to review an issue even where it was raised in a Rule 50(b) motion after trial because "'the requirement that [a JMOL] motion be made at the close of all the evidence is to be strictly observed'") (quoting Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1346 (9th Cir. 1986)).

Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1029 (9th Cir. 2003).

In another recent case in which the party moving for JMOL post-verdict failed to move at the close of all the evidence, the court noted that "substantial compliance is not enough":

Wal-Mart failed to move for judgment as a matter of law ("JMOL") before submission of the case to the jury. By not doing so, Wal-Mart failed to comply with the procedural prerequisite for renewing its motion for JMOL after trial. Fed. R. Civ. P. 50(a)-(b).  The Ninth Circuit construes this requirement strictly. Farley Transp. Co. v. Santa Fe Trail Transp. Co., 786 F.2d 1342, 1346 (9th Cir. 1986) ("the requirement that [a JMOL]

3 - OPINION & ORDER

motion be made at the close of all the evidence is to be strictly observed"). Therefore, JMOL is not available here.

Wal-Mart argues that its motion for summary judgment and its trial brief satisfy the requirement that it move for JMOL before the close of evidence. But substantial compliance is not enough. This circuit has held that even a motion for JMOL made at the close of plaintiff's evidence is not enough to satisfy Rule 50, because failing to make a motion for JMOL at the close of <u>all</u> the evidence may "lull the opposing party into believing that the moving party has abandoned any challenge to the sufficiency of the evidence" and thereby prejudice the opposing party. <u>Farley</u>, 786 F.2d at 1346. Wal-Mart asks for a case-specific determination of prejudice here, but <u>Farley</u> requires otherwise. <u>See</u> <u>id.</u> ("A strict application of Rule 50(b) obviates the necessity for a court to engage in a difficult and subjective case-by-case determination of whether a failure to [present] a motion for directed verdict at the close of all the evidence has resulted in such prejudice to the opposing party under the particular circumstances of that case."); <u>see also</u> <u>Image Tech. Serv., Inc. v. Eastman Kodak Co.</u>, 125 F.3d 1195, 1212 (9th Cir. 1997) (holding that a litigant's summary judgment motion does not satisfy the requirement for a motion for JMOL at the close of the evidence).

<u>Janes v. Wal-Mart Stores, Inc.</u>, 279 F.3d 883, 886-87 (9th Cir. 2002).

As stated in the rule, the motion must "specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." Fed. R. Civ. P. 50(a)(2); <u>see</u> <u>Lifshitz v. Walter Drake & Sons, Inc.</u>, 806 F.2d 1426, 1429 (9th Cir. 1986) (finding that a Rule 50(a) motion serves the "purpose of providing clear notice of claimed evidentiary insufficiencies"); <u>Farley</u>, 786 F.2d at 1346 (noting that strict adherence to the requirements of Rule 50 "serves the important purpose of alerting the opposing party to the alleged insufficiency of the evidence at a point in the trial where that party may still cure the defect by presenting further evidence").

Indicating a desire to make a motion is not enough. In a

4 - OPINION & ORDER

recent case, the Ninth Circuit noted this point in the following discussion:

> Inovaction did not move for judgment as a matter of law at the close of evidence.  Part way through defendants' presentation of their own case, the following exchange occurred:
>
> Mr. Devereaux:  I just wanted to confirm that the Rule 50 motions the court will hear after the case has been submitted.
>
> The Court:  I will hear the Rule 50 motions after the case.  It's been preserved.
>
> Mr. Deutsch [Counsel for Inovaction]:  And renewed?
>
> The Court:  And renewed.
>
> Asking if one will have the opportunity to make a motion and making a motion are two different things, however. Rule 50(a) requires that a motion for judgment as a matter of law "specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." Fed. R. Civ. P. 50(a).  Moreover, we construe strictly the requirement that a Rule 50(a) motion be made at the close of evidence.  See Patel v. Penman, 103 F.3d 868, 878 (9th Cir. 1996); Johnson v. Armored Transp. of Cal., Inc., 813 F.2d 1041, 1042 (9th Cir. 1987). Inovaction failed properly to move for judgment as a matter of law at the close of evidence.

Humetrix, Inc. v. Gemplus S.C.A., 268 F.3d 910, 923 (9th Cir. 2001).

While the Ninth Circuit strictly construes the rule requiring the making of a JMOL at the close of all the evidence before renewing it post-verdict, it has recognized a variety of circumstances which satisfy that requirement.

For example, a challenge to a jury instruction based on insufficient evidence can be construed as a Rule 50(a) motion made at the close of all the evidence when such a motion was already made at the close of plaintiff's case.  McClaran v. Plastic Indus., Inc., 97 F3d. 347, 360 (9th Cir. 1996).  And, in Lifshitz, the

5 - OPINION & ORDER

court found that a party satisfied Rule 50 procedural requirements to the extent his pretrial motion in limine raised the same issue later raised in his JNOV motion, when his pretrial motion in limine was ruled on by the district court only after colloquy with counsel at the close of all the evidence.   806 F.2d at 1428-30.    In reaching its decision, the court analyzed whether the purpose of the rule was satisfied in alerting the trial court to the sufficiency of the evidence and providing notice to the opposing party to allow it the opportunity to cure the defect in the evidence.   Id. at 1428-29.

Additionally, "an ambiguous or inartfully made motion for [JMOL]" can satisfy the Rule 50(b) requirement.   Reeves v. Teuscher, 881 F.2d 1495, 1498 (9th Cir. 1989).   And, where a party complies with specific directions from a district court about when to make a JMOL motion, the Ninth Circuit will find the procedural requirement met.   E.g., id. (where defendants attempted to make their JMOL motion at the close of all the evidence and the court interrupted and told them to make it after the verdict, the Ninth Circuit determined that they had satisfied the Rule 50 procedural requirements).

As stated during oral argument on these motions, I have reviewed the pertinent portions of the transcript from Wednesday, September 3, 2003. (Vol. 6 of Trial Transcript; docket #342).   My review of the transcript is consistent with what appears to be the parties' consensus:  the transcript does not contain a renewed JMOL motion(s) from defendant at the close of the evidence.   It is on this basis that plaintiff moves to strike the pending JMOLs.  Given that the record contains no evidence of the JMOLs having been made

6 - OPINION & ORDER

at the close of all the evidence, plaintiff contends that the pending post-verdict JMOLs must be stricken.[1]

While the transcript fails to reflect defendant's JMOL motions made at the end of the day following the close of all the evidence, on September 3, 2003, all four defense attorneys, court staff, and I, remember, to varying degrees, the motion(s) being renewed at that time.    Oct. 20, 2003 Bricken Declr. at ¶ 3; Oct. 20, 2003 Jones Declr. at ¶¶ 8, 9; Oct. 20, 2003 Feely Declr. at ¶¶ 6, 7; Oct. 20, 2003 Carr Declr. at ¶ 6.

As recited during the oral argument on these motions, Kathleen Bartholomew, my courtroom deputy during the trial, remembered a short recess on September 3, 2003, at a fairly late hour, approximately 7:30 p.m. or 8:00 p.m.  She recalls that during the break, I made the decision to adjourn for the night rather than return that evening.  She recalls that while I was on the bench, I informed counsel that the court would adjourn rather than recess,

---

[1] I note the impropriety of raising this argument via a motion to strike.  Plaintiff's argument should have been made as a response to the JMOL motions, not as a separate motion to strike, adding another layer of motion practice to this post-judgment period.  This is especially true given defendant's pending motion to stay which was filed before plaintiff's motion to strike.  As one of the elements of the stay inquiry is the length of time the stay could be in effect, plaintiff's motion to strike acquires the look and feel of a strategy designed to undermine the merits of defendant's motion to stay.

As a result, I construe the motion to strike as a partial response to the JMOL motions rather than a separate motion. Given the discussion with the parties regarding scheduling of the post-trial motions on October 14, 2003, and October 27, 2003, I address the merits of the motion to strike as a partial response by plaintiff to defendant's motions on procedural grounds only. In the future, such procedural grounds should be combined with responses on the merits.

7 - OPINION & ORDER

but she cannot recall if that was done formally or informally (which I interpret to mean by going on the record or not going on the record without a direct statement to that effect). She recalls reminding everyone that defendant had indicated it had a JMOL motion(s) to make and defense counsel Raymond Jones at that point renewing the JMOL motion(s) and my quickly denying the motion(s). She recalls some laughter and then exiting of court staff and counsel for the night.

My law clerk, Amy Kent, recalls the recess occurring at approximately 8:15 p.m. to 8:30 p.m., after which the court decided to adjourn rather than recess. She recalls that Ms. Bartholomew prompted defendant to renew its JMOLs at that point because of an expressed desire, which is in the transcript, by Jones earlier in the evening, to renew his JMOL motion(s). Ms. Kent recalls that upon Ms. Bartholomew's prompt, Jones made his motion(s). She does not recall the content of the motion(s), but she does recall that the motion(s) were quickly denied and were followed by laughter in the courtroom.

Furthermore, contrary to the declarations of defense counsel, Ms. Kent recalls that the court reporter was in attendance that entire evening and was not excused early with the proceedings being tape-recorded in her absence. As Ms. Bartholomew stated at oral argument, a portion of the final pretrial conference in this case had been tape-recorded in lieu of a live court reporter on August 20, 2003, because the court session ran late and the court reporter had a previous engagement. There was no taping done during the actual trial.

As disclosed at the oral argument, my recollection is that

8 - OPINION & ORDER

earlier in the day on September 3, 2003, I had expressed a preference, directed mainly at plaintiff, to hear the JMOL motions once. My comments were intended to address plaintiff's intent to file both oral and written JMOL motions. I indicated that I did not want an oral motion to be made, a ruling to be rendered, and then that identical motion to be made in writing. I did not intend this directive to suggest that renewed motions for JMOL at the close of the evidence were prohibited or that I wanted them at a different time. Apparently, defendant understood my intent as it later asked when I would take renewed motions. I responded that I would take them after the break we were then embarking upon. Unfortunately, neither defendant, nor I, brought them up immediately upon returning from that break.

Like Ms. Kent and Ms. Bartholomew, I have a recollection of Jones making a JMOL motion at the end of the day on September 3, 2003, following the close of the evidence. My memory is consistent with that of Ms. Kent's and Ms. Bartholomew's to the extent that I took a recess and had planned to come back, but then changed my mind after we went off the record. My recollection is that we had not heard any renewed JMOL motions by defendant up to that point.

I had not left the bench or the courtroom when I decided to adjourn for the night. I recall all defense counsel being present, and at a minimum, Mr. Vandenberg and Mr. Davis being present for plaintiff. I recall Ms. Bartholomew and Ms. Kent being present. I believe the court reporter was present as well. When I announced the recess was converted to an adjournment for the evening, there was no mention one way or the other of going "on the record" that I recall. At this point, prompted by Ms. Bartholomew's comment

9 - OPINION & ORDER

that there was an outstanding motion, Mr. Jones renewed defendant's motion for JMOL.  I recall the JMOL motion on non-infringement of the '042 patent being based on the fact that during rebuttal, defendant had obtained Dr. Shapiro's concession that defendant's product did not support the EDI format.  I recall it was a short discussion.  I believe I denied the motion before hearing any response from plaintiff.  I have no recollection of Jones explicitly making a JMOL motion with respect to damages.

These recollections are confirmed by the Court's September 3, 2003 Minute Order.  That Minute Order states, in more or less chronological fashion, the events that transpired that day, including that defendant rested its case, that defendant made certain JMOL motions, that plaintiff put on its rebuttal case, that plaintiff rested after its rebuttal case, and that "[d]efendant's renewed motion for judgment as a matter of law as to plaintiff's non-infringement claims as to claims 1-44 of the 042 patent, both literally and under the doctrine of equivalents, is denied." Docket #310.  As Ms. Bartholomew explained during oral argument on these motions, she presented the minute orders from trial to me before they were entered on the docket.  I specifically recall Ms. Bartholomew presenting the September 3, 2003 Minute Order to me and it being consistent with my recollection of what transpired during the trial that day.  I approved its entry on that basis.

Plaintiff's counsel have no memory of defendant renewing its JMOL motion(s) at the close of all the evidence.  The court reporter for those proceedings, Amanda LeGore, has also filed a declaration stating that other than what is in the official court transcript, she has no independent recollection of any other

10 - OPINION & ORDER

discussions occurring on that date and has no memory of anyone asking to go off the record, other than the usual going off the record for the recess.  Oct. 28, 2003 LeGore Declr.  Docket #379.

The Court Reporters Act provides that "[t]he transcript in any case certified by the reporter . . . shall be deemed prima facie a correct statement of the testimony taken and proceedings had."  28 U.S.C. § 753(b).  "No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other individual designated to produce the record."  Id.  "Each session of the court . . . shall be recorded verbatim by shorthand, mechanical means, electronic sound recording or any other method . . . " including "all proceedings . . . had in open court unless the parties with the approval of the judge shall agreed specifically to the contrary[.]"  Id.

While court reporters must record verbatim all proceedings in open court, their failure to do so does not require a per se rule of reversal.  United States v. Carrillo, 902 F.2d 1405, 1409 (9th Cir. 1990).  "[S]ubstantial and significant omissions from the verbatim transcript do not mandate a reversal if a suitable alternative method of reporting trial proceedings is provided or the record can be adequately reconstructed to accord effective appellate review."  United States v. Cashwell, 950 F.2d 699, 703 (11th Cir. 1992).

"Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise."  Mayer v. City of Chicago, 404 U.S. 189, 194 (1971) (internal quotation omitted).  "A statement of facts agreed

11 - OPINION & ORDER

to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial, or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript." Id. (internal quotation omitted).

Instructive here as well is Federal Rule of Appellate Procedure 10(e). That rule, dealing with the record on appeal, specifically addresses the correction or modification of the record. It provides that:

> (1) If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.
>
> (2) If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:
>
>> (A)   on stipulation of the parties;
>>
>> (B)   by the district court before or after the record has been forwarded; or
>>
>> ©)   by the court of appeals.

Fed. R. App. P. 10(e).

Based on the authorities cited, the omission from the transcript of defendant's renewed JMOL motion(s) at the end of the day on September 3, 2003, is not fatal to defendant's ability to renew its motion(s) post-verdict. By relying on the September 3, 2003 Minute Order, the declarations from defense counsel, the statements made by the courtroom deputy, the law clerk, and the court reporter, and my own independent recollection of the events, I am able to adequately reconstruct the record.

The reconstructed record reveals that defendant renewed its

12 - OPINION & ORDER

1   JMOL motion regarding the non-infringement of the '042 patent, both

2   literally and under the doctrine of equivalents, at the close of

3   all the evidence in the case.  The renewed motion was limited to

4   the non-infringement of the '042 patent.  That comports with my

5   recollection.  Jones's Declaration and Bricken's Declaration also

6   suggest that the renewed JMOL motion was limited to the non-

7   infringement issue and did not include a motion as to lost profits

8   or damages.  See Oct. 20, 2003 Jones Declr. at ¶¶ 8, 10 (referring

9   to renewing the JMOL on non-infringement and the "renewed motion"

10  in the singular); Oct. 20, 2003 Bricken Declr. at ¶ 3 (noting her

11  distinct memory that Jones renewed defendant's motion on non-

12  infringement). The September 3, 2003 Minute Order confirms this as

13  well.

14      Defendant argues that it preserved its JMOL motion on damages

15  because it complied with my directive to raise JMOL motions only

16  once.  As explained above, that was not my intent and it is clear

17  that defendant correctly understood my intent because defendant

18  itself expressly sought to renew its motions after I had given that

19  directive and I indicated that I would hear the renewed motions

20  after the break.  While it is unfortunate that defendant did not

21  immediately bring them to my attention upon resumption of court

22  following that break, defendant's failure to do so does not show

23  that it acted as a result of a court order to refrain from renewing

24  the motion.

25      Defendant also contends that there is no prejudice to

26  plaintiff by allowing defendant to renew the JMOL on damages post-

27  verdict given that defendant had made such a motion at the end of

28  plaintiff's case and there was no new damages evidence presented in

13 - OPINION & ORDER

plaintiff's rebuttal case. Defendant seems to take the position
that the rebuttal case could not have presented damages evidence in
any event.

While I understand defendant's argument, Ninth Circuit case
law has effectively rejected it. See Farley, 786 F.2d at 1346 n.2
(rejecting Seventh Circuit's case by case approach of assessing
whether a party has been prejudiced by another party's failure to
bring a JMOL motion at the close of all the evidence; noting that
under this approach, a court would have to consider whether the
evidence presented as part of the defendant's case weakened the
defendant's initial motion for a directed verdict, such that the
plaintiff believed "the defendant, by not renewing the motion, had
abandoned it because its evidentiary foundations had been weakened,
and thinking this had therefore not put in rebuttal evidence that
might have repaired the evidentiary deficiencies exposed by the
initial motion") (internal quotation omitted).

The reconstructed record does not support defendant's position
that it renewed any JMOL motion at the close of the evidence other
than the one directed at the non-infringement of the '042 patent.
Construing plaintiff's motion to strike as an opposition to
defendant's renewed post-verdict JMOL motions, I deny defendant's
renewed JMOL motion as to lost profits. However, based on the
reconstructed record, I conclude that defendant renewed its JMOL on
the non-infringement of the '042 patent, both literally and under
the doctrine of equivalents, at the close of all the evidence,
preserving its right to raise that motion again post-verdict.

Defendant notes that its post-verdict JMOL motion on lost
profits is a JMOL motion based on a challenge to the sufficiency of

14 - OPINION & ORDER

the evidence, as well as an alternative motion for new trial under Rule 59(a).    In the motion, defendant initially contends that plaintiff presented insufficient evidence on the issue of the effect of defendant's offering an acceptable non-infringing substitute.    Alternatively, defendant contends that if the court does not grant the JMOL motion, defendant seeks a new trial under Rule 59(a) because the clear weight of the evidence is contrary to the jury's conclusions on lost profits.

Defendant argues that because the new trial motion is brought under Rule 59, not Rule 50, and is based on a "clear weight of the evidence" standard rather than a "sufficiency of the evidence standard," Rule 50's requirement, as interpreted by the Ninth Circuit, that a post-verdict JMOL motion must be preceded by one on the same basis made at the close of the evidence, does not apply to the new trial motion.    I reluctantly reject this argument.

First, while I found no Ninth Circuit cases discussing whether a Rule 59 new trial motion challenging a verdict's evidentiary support is subject to the Rule 50(b) requirement, plaintiff cites one case in which the Ninth Circuit so held.    In a 2001 case, the court held that the district court had properly denied the defendant's post-verdict JMOL <u>and</u> new trial motions because of defendant's failure to comply with Rule 50(b) and raise the issues at the close of all the evidence.    <u>Navellier v. Sletten</u>, 262 F.3d 923, 948 (9th Cir. 2001), <u>cert. denied</u>, 536 U.S. 941 (2002).

Second, I agree with defendant that different standards govern a JMOL motion challenging the sufficiency of the evidence and a Rule 59(a) motion arguing that the verdict is against the clear weight of the evidence.    The Ninth Circuit suggests that where

15 - OPINION & ORDER

1  sufficient evidence supports a jury verdict but the clear weight of

2  the evidence is contrary to that verdict, the court may grant a new

3  trial motion as long as it is not doing so simply because it would

4  have arrived at a different verdict, <u>see</u>, <u>e.g.</u>, <u>Silver Sage</u>

5  <u>Partners v. City of Desert Hot Springs</u>, 251 F.3d 814, 819 (9th Cir.

6  2001) (explaining standards for new trial motions under Rule 59).

7  However, this judge, for one, does not see how, under this

8  standard, a court can conclude that a verdict was against the clear

9  weight of the evidence in any manner other than by substituting the

10 court's verdict for the jury's.  In this instance, because there

11 was sufficient evidence to send the lost profits issue to the jury,

12 I decline to engage in a Rule 59 analysis.  I conclude that

13 defendant's failure to renew its lost profits JMOL motion at the

14 close of all the evidence prevents it from raising a post-verdict

15 Rule 50 or Rule 59 motion challenging the verdict's evidentiary

16 support under controlling Ninth Circuit law.

17 Finally, I reject defendant's oral motion for new trial made

18 during oral argument on these motions.  Defendant argued that if I

19 failed to reconstruct the record and make findings that it had

20 renewed all of its JMOL motions at the close of the evidence, the

21 court reporter's error in failing to transcribe those renewed JMOL

22 motions requires a new trial.  I disagree.  Now that the record has

23 been reconstructed, there are no omissions.  There is no failure of

24 the record justifying a new trial.

25 II.  Motion to Stay

26 Defendant seeks to stay enforcement of the judgment and all

27 injunctive relief pending resolution of its post-trial motions.

28 Defendant also seeks to waive the posting of security for the

16 - OPINION & ORDER

1   period of the stay.

2       Rule 62(b) governs stays pending motions for new trial or

3   judgment:

> In its discretion and on such conditions for the security
> of the adverse party as are proper, the court may stay
> the execution of or any proceedings to enforce a judgment
> pending the disposition of a motion for a new trial or to
> alter or amend a judgment made pursuant to Rule 59, or of
> a motion for relief from a judgment or order made
> pursuant to Rule 60, or of a motion for judgment in
> accordance with a motion for a directed verdict made
> pursuant to Rule 50, or of a motion for amendment to the
> findings for additional findings made pursuant to Rule
> 52(b).

10  Fed. R. Civ. P. 62(b).

11      The parties do not cite, and I have not found, any Ninth

12  Circuit cases specifically addressing the exercise of the district

13  court's discretion under Rule 62(b).  A 1993 District of Oregon

14  case addresses the discretion exercised under Rule 62©), governing

15  a stay of injunctive relief pending appeal.  Texaco Refining &

16  Mktg., Inc. v. Davis, 819 F. Supp. 1485, 1486 (D. Or. 1993).

17  There, Judge Frye stated that

> [i]n addressing the motion for a stay pending appeal, the
> court examines the following factors: "(1) whether the
> stay applicant has made a strong showing that he is
> likely to succeed on the merits; (2) whether the
> applicant will be irreparably injured absent a stay; (3)
> whether issuance of the stay will substantially injure
> the other parties interested in the proceeding; and (4)
> where the public interest lies."

Id. (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

    Other courts also rely on standards used for Rule 62©) or Rule

62(d) motions in analyzing Rule 62(b) motions.  E.g., Equal

Employment Opportunity Comm'n v. Preferred Mgmt. Corp., No. IP 98-

1697-CB/S, 2002 WL 31132216, at *3 n.4 (S.D. Ind. Sept. 24, 2002)

(noting the use of Rule 62(d) standard because it is substantially

17 - OPINION & ORDER

identical to rule 62(b)); <u>Boehringer Ingelheim Vetmedica, Inc. v. Shering-Plough Corp.</u>, 106 F. Supp. 2d 696, 708 (D. N.J. 2000) (noting four relevant questions are public interest, injury to other party, irreparable injury to applicant, likely of applicant prevailing on merits of post-trial motions).

The relevant factors need not, however, "be given equal weight." <u>Standard Havens Prods., Inc. v. Gencor Indus.</u>, 897 F.2d 511, 512 (Fed. Cir. 1990). For example, when the harm to the applicant is "great enough," the court will not require a "strong showing" that the applicant is "likely to succeed on the merits." <u>Id.</u> at 513 (internal quotation omitted). Additionally, when considering motions to stay pending appeal under Rule 62(d), "the district court has broad discretionary power to waive the bond requirement if it sees fit." <u>Townsend v. Homan Consulting Corp.</u>, 881 F.2d 788, 796 (1989), <u>vacated on other grounds</u>, 914 F.2d 136 (9th Cir. 1990).

A.  Likelihood of Success on the Merits

While I do not prejudge defendant's post-verdict JMOL on non-infringement, I am familiar with the law and facts of the case and can say, without having actually reviewed the motion, that during the trial, I was concerned about the issue and the evidence presented on it. In contending that defendant is not likely to prevail on the motion, the only argument plaintiff raises is the alleged procedural defect under Rule 50, an argument I have now rejected. While I am reluctant to ascribe the degree of success that defendant may have as fair, substantial, or somewhere in between, I am prepared to say that the motion deserves serious consideration.

18 - OPINION & ORDER

B.  Irreparable Harm to Defendant

Although defendant failed to offer evidentiary support with its initial motion, the materials filed with defendant's reply memorandum indicate that without a stay and waiver of security, the company is at serious risk of failure, of laying off its employees, and of breaching millions of dollars of already-contracted services during peak application season.  Efforts to secure a bond, although not detailed in the materials, have failed.  Its liabilities currently exceed its assets.  It cannot perform its contracts if its operating cash is taken.

Defendant argues that if it is forced to post security, it will go out of business and will have no realistic opportunity to pursue post-trial motions or an appeal.  As a result, the damage to defendant will be irreversible.

Clearly, there is a serious risk of irreparable injury.  In similar cases, where the harm to the applicant includes the failure of the business, or what one court has called a "corporate death penalty," In re Hayes Microcomputer Prods., Inc., 766 F. Supp. 818, 823 (N.D. Cal. 1991), aff'd, 982 F/2d 1527 (Fed. Cir. 1992), courts have  stayed money judgments and injunctions without the posting of a bond.  Standard Havens, 897 F.2d at 515-16; Hayes, 766 F. Supp. at 823-24.

C.  Injury to Plaintiff

Plaintiff contends that it will be harmed if a stay is allowed because a stay will preclude its collection of the money judgment and it will lose the protections afforded by the injunction. Plaintiff suggests that if a stay without security is allowed, defendant will receive a substantial portion of its annual revenue

19 - OPINION & ORDER

1    and satisfy other creditors, while decreasing plaintiff's
2    likelihood of collecting its judgment.

3        Given defendant's precarious financial position as described
4    in the previous section, I can, as could the court in Standard
5    Havens, "discern there may be some risk of not being able to
6    collect the damages assessed[.]" Standard Havens, 897 F.2d at 515.
7    But, also as in Standard Havens, "neither its probability nor
8    impact can be quantified." Id. If a stay is not granted, there
9    will likely be minimal recovery of the money judgment by plaintiff.
10   With a stay, defendant will continue to be an ongoing business,
11   retaining whatever assets it has.   Thus, again as noted by the
12   Standard Havens court, "[i]t is speculative . . . that
13   [plaintiff's] prospects for recovery of the full judgment will
14   further diminish substantially with a stay." Id.

15       Additionally, as discussed in the final section of this
16   Opinion below, I expect to resolve defendant's pending JMOL motion
17   within a matter of weeks.   Any stay granted under Rule 62(b) would
18   dissolve upon resolution of the motion.[2]  Thus, the length of this
19   Rule 62(b) stay will be fairly short, lessening the impact on
20   plaintiff.

21       D.   Public Interest

22       Defendant argues that there is significant risk to the public
23   interest if a stay is denied.   Defendant argues that failure to

24

25       [2]  If the JMOL motion is decided unfavorably to defendant, I
     presume defendant will seek a stay pending appeal under Rules
26   62(c) and (d).   Such motions are not before me at this time,
     however, and my ruling here, which recognizes the relatively
27   short time that this Rule 62(b) stay will be effective, is not
     intended to control the time period after the JMOL motion is
28   resolved.

20 - OPINION & ORDER

provide its contracted-for services would cause significant disruption and irreparable harm to non-party schools and applicants during peak applicant season.

Defendant explains that a stay is in the public interest because schools are currently processing applications and the processing could be interrupted if there is no stay. Defendant notes that even if schools switched vendors, the transition would take time and the "down period" could last through the college application processing season. Defendant states that applicants could suffer consequences regarding admission opportunities if applications are lost by virtue of an interruption to the process, which would occur without a stay. Defendant suggests that the business of non-party schools could suffer and the ability of such schools to provide on-line services could be adversely affected.

In response, plaintiff suggests that defendant could dismantle its electronic payment feature and thus, would no longer infringe the '042 patent. Defendant notes that plaintiff's suggestions that defendant dismantle the electronic payment feature of its product, or have its client colleges revert to paper applications, are unworkable. In contrast to the data sharing feature used by only 1-2% of defendant's client colleges and which defendant dismantled in December 2002, many of defendant's client colleges require electronic payment capability. Defendant states that to dismantle that function would require defendant to renegotiate each contract to provide an alternative which could take months.

Based on defendant's arguments, I conclude that there is a substantial risk of disruption of service to non-parties such as defendant's client colleges and their on-line applicants.

21 - OPINION & ORDER

1    Considering all the factors, and especially noting the serious

2    risk of irreparable harm to defendant, along with the harm to the

3    public and the relatively short period of time at issue, I conclude

4    that a stay of the judgment and injunction is appropriate and that

5    no security is required.

6    III.  Scheduling of Post-Trial Motions

7    In an effort to conserve judicial resources, I often attempt

8    to hear all pending motions in a case at the same time.  Thus, I

9    suggested to the parties in this case that given my schedule, and

10   the fact that plaintiff's post-trial motions for attorney's fees

11   and enhanced damages, as well as other post-trial motions, had not

12   yet been filed, a December 2003 oral argument date on all post-

13   trial motions was likely.

14   Given the impact of the stay of execution of the judgment and

15   injunctive relief, I now conclude that it is best to resolve the

16   pending JMOL motion on non-infringement as soon as possible and to

17   hear it separately from any other post-trial motions.

18   To that end, plaintiff will respond to defendant's post-

19   verdict JMOL on non-infringement of the '042 patent by Wednesday,

20   November 5, 2003.  Defendant will reply by Wednesday, November 12,

21   2003.  Oral argument will be on Monday, November 24, 2003, at 9:30

22   a.m.

23                              CONCLUSION

24   Plaintiff's motion to strike (#361) is construed as a partial

25   opposition on procedural grounds to defendant's JMOL motions and is

26   not considered to be a motion in its own right.  Defendant's motion

27   for JMOL as to lost profits (#349) is denied.  Defendant's motion

28   to stay execution of the judgment and injunctive relief pending

22 - OPINION & ORDER

resolution of its JMOL motion on non-infringement (#347) is granted. Defendant's motion for JMOL as to non-infringement of the '042 patent (#348) is scheduled for briefing and oral argument as above. Scheduling of other anticipated post-verdict motions will be done in a separate order.

        IT IS SO ORDERED.


                        Dated this __28th__ day of __October__, 2003


                                    __/s/ Dennis James Hubel__

                                    Dennis James Hubel
                                    United States Magistrate Judge

23 - OPINION & ORDER