1

2

3

4

5

6

7

8

9                     IN THE UNITED STATES DISTRICT COURT

10                        FOR THE DISTRICT OF OREGON

11   COLLEGENET, INC., a Delaware  )
     corporation,                  )
12                                 )
                      Plaintiff,   )     Nos. CV-02-484-HU (LEAD CASE)
13                                 )           CV-02-1359-HU
           v.                      )
14                                 )
     APPLYYOURSELF, INC., a        )     OPINION & ORDER
15   Delaware corporation,         )
                                   )
16                    Defendant.   )
     ──────────────────────────────)
17
     John D. Vandenberg
18   Scott E. Davis
     Kristin L. Cleveland
19   KLARQUIST SPARKMAN, LLP
     121 S.W. Salmon Street, Suite 1600
20   Portland, Oregon 97204

21   Robert A. Shlacter
     STOLL STOLL BERNE LOKTING & SHLACTER, P.C.
22   209 S. W. Oak, Suite 500
     Portland, Oregon 97204
23
          Attorneys for Plaintiff
24
     Kathleen C. Bricken
25   GARVEY SCHUBERT BARER
     121 S.W. Morrison Street
26   Portland, Oregon 97204-3141

27   / / /

28   / / /


     1 - OPINION & ORDER

Lawrence E. Carr III
Raymond C. Jones
Timothy Feely
CARR, MORRIS & GRAEFF, P.C.
1120 G Street, N.W., Suite 930
Washington, D.C. 20005

    Attorneys for Defendant

HUBEL, Magistrate Judge:

    Following a jury verdict in plaintiff's favor and the entry of final judgment along with injunctive relief, both parties make several post-trial motions. In a December 9, 2003 Opinion & Order, I granted defendant's motion for judgment as a matter of law regarding infringement of the '042 patent. Remaining for resolution are the following motions: (1) defendant's motion to reconsider an October 28, 2003 Opinion & Order regarding new trials; (2) defendant's motion to alter judgment or alternatively for new trial, regarding James Wolfston's expert testimony on damages; (3) defendant's motion for judgment as a matter of law, or to alter judgment, or for new trial, regarding price erosion damages; (4) defendant's motion for new trial on the issues of infringement, willfulness, jury misconduct, and incomplete transcript; (5) plaintiff's motion to amend the judgment and award enhanced damages; and (6) plaintiff's motion to designate the dismissal of defendant's '042 counterclaims and affirmative defenses to be with prejudice.

    For the reasons explained below, I grant defendant's motion to reconsider, I deny defendant's motion directed to Wolfston's damages testimony, I deny defendant's motion as to price erosion damages, I deny defendant's "omnibus" motion for new trial, I grant in part and deny in part plaintiff's motion to amend the judgment

2 - OPINION & ORDER

1   and award enhanced damages, and I deny plaintiff's motion to deem

2   the dismissal of defendant's '042 counterclaims and affirmative

3   defenses as with prejudice.

4                            STANDARDS

5   I.  Rule 59(e) Motion to Alter or Amend Judgment

6        Rule 59(e) allows for a motion to alter or amend a judgment if

7   filed within ten days after entry of the judgment. Fed. R. Civ. P.

8   59(e). "Amendment or alteration is appropriate under Rule 59(e) if

9   (1) the district court is presented with newly discovered evidence,

10  (2) the district court committed clear error or made an initial

11  decision that was manifestly unjust, or (3) there is an intervening

12  change in controlling law." Zimmerman v. City of Oakland, 255 F.3d

13  734, 740 (9th Cir. 2001).

14  II.  Rule 59(a) Motion for a New Trial

15       The court may grant a new trial "for any of the reasons for

16  which new trials have heretofore been granted[.]" Fed. R. Civ. P.

17  59.  Those reasons include when "the verdict is contrary to the

18  clear weight of the evidence, or is based upon evidence which is

19  false, or to prevent, in the sound discretion of the trial court,

20  a miscarriage of justice." Silver Sage Partners, Ltd. v. City of

21  Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001) (internal

22  quotation omitted); see also Union Oil Co. of Cal. v. Terrible

23  Herbst, Inc., 331 F.3d 735, 742 (9th Cir. 2003) ("trial court may

24  grant a new trial only if the jury's verdict was against the clear

25  weight of the evidence."), petition for cert. filed, 72 U.S.L.W.

26  (U.S. Oct. 16, 2003) (No. 03-625).

27       When, however, the new trial motion is based on insufficiency

28  of the evidence, a "stringent standard" applies, and the motion

3 - OPINION & ORDER

should be granted only if the verdict "is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result." Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1229 (9th Cir. 2001) (internal quotation omitted).

Although the trial court may weigh the evidence and credibility of the witnesses, "the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." Roy v. Volkswagen of Am., Inc., 896 F.2d 1174, 1176 (9th Cir. 1990) (internal quotation omitted); see also Union Oil Co., 331 F.3d at 743 ("It is not the courts' place to substitute our evaluations for those of the jurors."); Silver Sage Partners, 251 F.3d at 819 (a district court may not grant a new trial simply because it would have arrived at a different verdict).

III.  Rule 50 Motion for Judgment as a Matter of Law

In analyzing a motion for judgment as a matter of law, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. Horphag Research, Ltd. v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir. 2003), petition for cert. filed, 72 U.S.L.W. 3393 (U.S. Nov. 20, 2003) (No. 03-773). To grant a motion for judgment as a matter of law, the court must find "no legally sufficient evidentiary basis for a reasonable jury to find" in favor of the nonmoving party. Fed. R. Civ. P. 50(a)(1).

A judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury. Ostad v. Oregon Health Sci.

4 - OPINION & ORDER

1  Univ., 327 F.3d 876, 881 (9th Cir. 2003).  The court may not
2  substitute its view of the evidence for that of the jury.  Costa v.
3  Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002), aff'd, 123
4  S. Ct. 2148 (2003).  The court is not permitted to make credibility
5  determinations and it may not weigh the evidence.  Id.

6                              DISCUSSION

7  I.  Defendant's Motion for Reconsideration

8       On October 10, 2003, defendant moved for judgment as a matter
9  of law (JMOL), and alternatively for a new trial, as to non-
10 infringement of the '042 patent and as to lost profits damages.
11 Plaintiff moved to strike the two JMOL motions based on defendant's
12 alleged failure to have initially made the Rule 50(a) motions at
13 the close of the evidence.

14      In an October 28, 2003 Opinion & Order, I construed
15 plaintiff's motion to strike as a partial opposition on procedural
16 grounds, to defendant's JMOL motions.  I concluded that defendant
17 had made a Rule 50(a) motion for JMOL as to the non-infringement of
18 the '042 patent.  I also concluded, however, that defendant had
19 failed to make a Rule 50(a) JMOL motion on the issue of lost
20 profits.  As a result, I denied defendant's lost profits JMOL
21 motion on that basis.

22      Because the lost profits JMOL motion was alternatively brought
23 as a motion for new trial under Rule 59, I addressed plaintiff's
24 argument that although Rule 59 does not, in contrast to Rule 50,
25 expressly state that a Rule 59 new trial motion must be made at the
26 close of the evidence as a prerequisite to being made post-verdict,
27 any Rule 59 new trial motion challenging the sufficiency of the
28 evidence is subject to that requirement.  I agreed with plaintiff.

5 - OPINION & ORDER

1  Oct. 28, 2003 Op. & Ord. at pp. 14-16.

2      Defendant now moves for reconsideration of that decision.
3  During the December 19, 2003 oral argument on this and the other
4  post-trial motions, I granted defendant's request to reconsider my
5  ruling.  Having now done so, I agree with defendant that while
6  there is some contradictory authority, the Ninth Circuit has now
7  made clear that a Rule 59 new trial motion addressed to the
8  sufficiency of the evidence need not be preceded by a Rule 50(a)
9  motion at the close of the evidence.

10      In the October 28, 2003 Opinion & Order, I noted that in a
11  2001 case, the Ninth Circuit, while not expressly discussing the
12  relationship between Rule 50's requirements and Rule 59, had held
13  that the district court had properly denied the defendant's post-
14  verdict JMOL <u>and</u> new trial motions because of defendant's failure
15  to comply with Rule 50(a) and raise the issues at the close of all
16  the evidence.  <u>Navellier v. Sletten</u>, 262 F.3d 923, 948 (9th Cir.
17  2001), <u>cert. denied</u>, 536 U.S. 941 (2002).  Other Ninth Circuit
18  cases are in accord.  <u>See</u> <u>Zhang v. American Gem Seafoods, Inc.</u>, 339
19  F.3d 1020, 1028-29 (9th Cir. 2003) (affirming district court's
20  denial of JMOL/new trial motion because party failed to raise the
21  issue at the close of all the evidence or at any time prior to
22  return of the verdict); <u>Janes v. Wal-Mart Stores, Inc.</u>, 279 F.3d
23  883, 888 (9th Cir. 2002) (failure to make a timely Rule 50(a)
24  motion foreclosed defendant's argument that it was entitled to a
25  new trial on the issue of good cause to terminate the plaintiff's
26  employment).

27      However, despite this authority, the court held otherwise in
28  an October 21, 2003 opinion.  <u>Freund v. Nycomed Amersham</u>, 347 F.3d

6 - OPINION & ORDER

752 (9th Cir. 2003), was a wrongful discharge case brought under California law.  The defendant made a Rule 50(a) JMOL motion solely on the ground that the plaintiff's complaint did not implicate any public policy that could give rise to a wrongful termination claim. The trial court denied the motion.  The jury returned a verdict in the plaintiff's favor.

Following the trial, the defendant renewed its JMOL motion and also raised a new argument that the punitive damages award should be overturned because the plaintiff did not prove that either of the individual defendants had acted with malicious intent in terminating him.  The defendant also moved for a new trial under Rule 59.  The district court granted in part the JMOL motions, overturning the punitive damages award, but upholding the verdict that the plaintiff was wrongfully terminated in violation of public policy.  The district court denied the defendant's motion for a new trial.

Both parties appealed.  The plaintiff argued that the district court erred in granting the JMOL motion regarding punitive damages because the defendant had failed to move for such relief at the close of the evidence under Rule 50(a).  The Ninth Circuit agreed. Id. at 761.

As to the Rule 59 motion, the Ninth Circuit characterized the motion as "urg[ing] a new trial on two grounds that it had also urged in support of its motion for judgment as a matter of law: (1) insufficiency of evidence of malice, and (2) insufficiency of evidence of the financial condition of Nycomed."  Id. at 763.  The district court denied the motion because it had already vacated the punitive damages award and thus, did not need to entertain the

7 - OPINION & ORDER

1  defendant's argument that a new trial was warranted because the

2  punitive damages were excessive.  _Id._  On appeal, the defendant

3  argued that the new trial motion should be remanded to the district

4  court for its consideration.  The Ninth Circuit agreed.

5       First, the court noted that under Rule 50(c), the district

6  court should not have declined to reach the new trial motion

7  regarding punitive damages on the ground that it had already

8  granted a JMOL on that issue.  _Id._ at 764-65.  As for the Rule

9  50(a) requirement applying to Rule 59 motions, the court stated:

> We reject Freund's contention that Nycomed has
> waived its right to a new trial motion.  Unlike a motion
> for judgment as a matter of law, a motion for new trial
> does not have to be preceded by a Rule 50(a) motion prior
> to submission of the case to the jury.  See Williams v.
> Fenix & Scisson, Inc., 608 F.2d 1205, 1207 (9th Cir.
> 1979) (holding that failure to move for directed verdict
> nullifies a motion for judgment notwithstanding the
> verdict, but leaves open for review a motion for new
> trial); see also Farley Transp. Co. v. Santa Fe Transp.
> Co., 786 F.2d 1342, 1347 (9th Cir. 1985); Gilchrist v.
> Jim Slemons Imports, Inc., 803 F.2d 1488, 1493 (9th Cir.
> 1986).  FN15
>
> FN15.  We do not regard Janes v. Wal-Mart Stores
> Inc., 279 F.3d 883 (9th Cir. 2002), as casting any
> doubt on this proposition.  In Janes, the defendant
> argued that it was entitled to a new trial because
> the evidence established as a matter of law that it
> had good cause to terminate the plaintiff's
> employment.  Janes held that the failure to make a
> timely Rule 50(a) motion foreclosed that
> contention.  Id. at 888.  Janes cited both
> Gilchrist and Farley, which it was bound to follow,
> without casting any doubt on the holding of those
> cases that a motion for new trial is not foreclosed
> by failure to make an earlier Rule 50(a) motion.

24  _Id._ at 765.

25       Plaintiff argues that _Freund_ is not a basis for overturning my

26  previous conclusion because the _Freund_ court did not specify which

27  ground(s) for new trial should be considered upon remand and the

28  opinion thus does not preclude the district court, upon remand,

8 - OPINION & ORDER

from applying Ninth Circuit law that a challenge limited to the sufficiency or weight of the evidence has been waived by failing to rase a Rule 50(a) motion at the close of the evidence. I reject this argument.

The only bases for the new trial motion were insufficiency or weight of the evidence arguments relating to punitive damages. With those arguments being the only ones made in support of the new trial motion, the Ninth Circuit nonetheless rejected the plaintiff's argument that the defendant had waived the new trial arguments because of its failure to raise them as part of its Rule 50(a) JMOL motion. The only reasonable way to interpret the opinion is that the Ninth Circuit intended that Rule 59 new trial motions attacking the sufficiency or weight of the evidence are not subject to Rule 50(a) and may be raised regardless of whether they are raised at the close of the evidence.

Based on _Freund_ and the cases it cites, I conclude that my October 28, 2003 Opinion & Order is in error. I note that prior to its motion for reconsideration, defendant did not focus on the Rule 59 issue in its earlier briefing. It did not cite _Williams_, _Farley_, or _Gilchrist_. It did not bring _Freund_ to my attention. While I did conduct some independent research into the issue, it was limited and did not reveal any contrary authority. However, having reviewed the _Freund_ decision from one week prior to my opinion, I agree with defendant that its Rule 59 new trial motions may be properly considered.

II. Defendant's Motion to Alter Judgment, Alternatively for a New Trial re: Wolfston's Expert Damages Testimony

While defendant makes this motion under both Rule 59(e) and

9 - OPINION & ORDER

Rule 59(a), defendant cites no standards for a Rule 59(e) motion and makes no separate argument in support of that motion. As seen in the standards set forth above, the only possible basis for the Rule 59(e) motion is the one addressed to clear error. Defendant does not assert any newly discovered evidence or intervening change in the controlling law. As I understand this motion, defendant first seeks to alter or amend the judgment to exclude damages based on what it assigns as multiple errors of law regarding the damages case. Alternatively, defendant seeks a new trial on the basis that the verdict was contrary to the clear weight of the damages evidence.

Defendant's arguments include: (1) the court erred in denying defendant's April 2003 motion to strike Wolfston's testimony; and (2) the court erred in allowing Wolfston's testimony at trial over defendant's objection based on plaintiff's attorney's role in the writing of the expert report, there was no independent methodology of the witness, there was no reliable data regarding acceptable non-infringing substitutes, there was no reliable data regarding the relevant market, and the witness applied an erroneous reasonable royalty damages factor of gross profits rather than net profits.

On April 29, 2003, defendant moved to strike the testimony of plaintiff's expert and chief executive officer James Wolfston and his report on damages, as well as plaintiff's damages claim. Defendant made two primary arguments: (1) Wolfston did not meet the qualifications required to give expert testimony; and (2) the report's substance was flawed. I rejected defendant's arguments and denied its motion in a May 9, 2003 Order.

10 - OPINION & ORDER

On August 28, 2003, during the trial and after Wolfston testified in plaintiff's case in chief, defendant orally moved to strike Wolfston's damages testimony. I took the motion under advisement. On August 29, 2003, defendant filed a written motion to strike Wolfston's damages testimony and his damages report. There was extensive written briefing by both parties. I heard oral argument on the motion on September 2, 2003, still during the trial. The bases for the oral and written motions made by defendant at trial were that (1) plaintiff's attorney wrote the expert report; (2) Wolfston applied no methodology; rather, the methodology was determined and applied by counsel from the outset; and (3) Wolfston disregarded factual analysis and made spurious assumptions.

I initially took the written motion under advisement, and then later denied the oral and written motions orally from the bench. I noted that most of defendant's attack on plaintiff's damages case went to the weight of the evidence, not the methodology. Vol. 5 Trial Trans. at pp. 141-42. I concluded that while defendant made several arguments in support of excluding Wolfston's expert, the testimony should not be excluded. Id.

Defendant makes no new arguments in the present motion. The only new evidence defendant cites in the present motion are plaintiff's attorney billing records submitted by plaintiff in support of its attorney's fee petition. While I agree with defendant that the records do not reveal extensive dialogue between Wolfston and his attorneys regarding the preparation of the expert report, no attorney billing records would show what Wolfston did on his own to prepare the report. Thus, I view the records as having

11 - OPINION & ORDER

limited relevance to the issues.

Given the lack of new arguments and the lack of new relevant evidence, I see no need to re-articulate my previous reasoning denying the motions to strike Wolfston's expert testimony and damages report. For the reasons explained in the May 9, 2003 Order and in my oral ruling on September 2, 2003, I conclude that I made no error in denying the motion to strike Wolfston's testimony, and thus the verdict is not against the clear weight of the evidence. I deny defendant's motion to alter or amend the judgment and alternative motion for a new trial directed at Wolfston's expert damages evidence.

III. Defendant's Motion for JMOL, or to Alter Judgment, or for New Trial Regarding Price Erosion Damages

As indicated, defendant brings this motion first as one for JMOL, then to alter judgment, and finally for new trial. For the reasons articulated in my October 28, 2003 Opinion & Order regarding plaintiff's motion to strike defendant's JMOL motions, I deny this JMOL motion because, based on the reconstructed record described in that Opinion, it is beyond any issue defendant raised in support of its Rule 50(a) JMOL motion made at the close of the evidence in the case.

Additionally, I deny the motion to alter judgment under Rule 59(e). I do not read this motion as presenting any newly discovered evidence, as citing any intervening change in controlling law, or as addressing any district court error or decision that was manifestly unjust. Zimmerman, 255 F.3d at 740. Thus, I consider this motion only as one for new trial under Rule 59(a).

12 - OPINION & ORDER

1    In this motion, defendant contends that the lost profits

2  damages awarded by the jury on both the '278 and '042 patents is

3  against the clear weight of the evidence because of the absence of

4  evidence on price erosion.  Defendant argues that plaintiff's price

5  erosion evidence was limited to Wolfston's testimony about "strong

6  feelings" and "beliefs" that if defendant were not infringing,

7  plaintiff could charge more for its product.  Defendant attacks the

8  lack of any "real evidence" on this issue and further attacks the

9  lack of testimony regarding the decrease in sales which would have

10 occurred at a higher hypothetical price.

11     A lost profits damages case may be based on diverted sales,

12 price erosion, and/or increased costs.  Herbert F. Schwartz, Patent

13 Law & Practice 105 (Fed. Jud. Center, 2d ed. 1995).  In this case,

14 plaintiff presented its lost profits claim based on two theories -

15 diverted sales and price erosion.  The verdict form did not require

16 the jury to separately state the lost profits damages based on

17 diverted sales and those based on price erosion.

18     I agree with plaintiff that given defendant's lack of

19 objection to this part of the verdict form, defendant has waived

20 its right to challenge only one of the two lost profits damages

21 theories presented to the jury.  The jury's verdict can be

22 sustained on the diverted sales theory and its supporting evidence.

23 See Mitsubishi Elec. Corp. v. Ampex Corp., 190 F.3d 1300 (Fed. Cir.

24 1999) (multiple theories of invalidity presented to jury, but

25 verdict form contained only general invalidity question; Federal

26 Circuit, applying Ninth Circuit law, faced with issue of whether

27 insufficient evidence on only one of the theories required that the

28 entire verdict be overturned, found that the party challenging the

13 - OPINION & ORDER

verdict had waived any objection that the verdict should be overturned on account of inadequate evidence on one of the two theories when it failed to object to the general invalidity question on the verdict form).

Furthermore, I note that Wolfston testified that had defendant not been infringing, plaintiff would have been able to raise its per application price twenty-five percent to $6.25. Vol. 2 Trial Trans. at pp. 261-65. Additional testimony established that defendant's average price per application was $7.00. Vol. 5 Trial Trans. at p. 102. A reasonable inference from this testimony is that plaintiff could increase its per application fee and not lose sales given that its hypothetical higher price is still lower than defendant's average per application price. Thus, even if defendant had not waived its ability to object to the price erosion evidence, the lost profits verdict is not against the clear weight of the evidence.

I deny defendant's new trial motion directed at price erosion damages evidence.

IV. Defendant's Motion for New Trial:  Infringement, Willfulness, Jury Misconduct, and Incomplete Transcript

This motion has four distinct parts:  infringement, willfulness, jury misconduct, and incomplete transcript. I address them in turn.

A.  Infringement

Defendant argues that a new trial on infringement is warranted on two bases:  (1) the unequivocal testimony was that defendant's systems do not provide custom forms and thus, do not infringe the '278 or the '042 patents; and (2) defendant's systems do not

14 - OPINION & ORDER

provide custom data delivery and thus, do not infringe claims 6-8 and 27 of the '278 patent.  I address defendant's arguments in turn.

1.  Custom Forms

Claim 1 of the '278 patent provides, in pertinent part:

creating in response to a request from an applicant for an application to a first institution a first application <u>form customized in accordance with the preferences of the first institution</u> . . . ;

. . .

creating in response to a request from the applicant for an application to a second institution a second application <u>form customized in accordance with the preferences of the second institution</u> . . . ;

Exh. 2 (22:37-40, 54-57) (emphasis added).

Claim 21 provides, in pertinent part:

A system for creating and processing <u>customized forms</u> for unrelated institutions . . . ;

. . .

first data storage in communication with the server computer and including form description information <u>specifying the content and appearance of each customized form</u>;

<u>Id.</u> (24:52-53, 59-62) (emphasis added).  Independent claims 1, 16, and 32 of the '042 patent contain similar limitations regarding customized forms.  While I have already granted defendant's JMOL as to the '042 patent, I am required to address this alternative new trial motion directed at the infringement of the '042 patent according to Rule 50(c).

Defendant argues that the undisputed evidence is that neither of defendant's systems can provide a custom form according to the preferences of each institution.  Rather, defendant contends, while its systems provide a "modicum" of flexibility, they use a

15 - OPINION & ORDER

1    template-driven forms interface which restricts what an institution

2    may do to customize the form.

3        Defendant relies on the following testimony from plaintiff's

4    expert Dr. Leonard Shapiro:

5        Q:    Indeed.

6              But in the Lewis & Clark example in the patent, the
               emblem for Lewis & Clark is in the top, in the
7              middle.   Right?

8        A:    Yes.

9        Q:    And isn't that one of the places that ApplyYourself
               can't put an emblem?

10

11       A:    Yes.   I was quite aware of that when I did my
               analysis and I was struck by the fact that
               ApplyYourself used this public domain package.   I
12             thought it was quite interesting and illuminating,
               in studying -

13

         Q:    Well, there's no – I'm sorry.
14

         A:    It's -
15

         Q:    There's no problem using something in the public
16             domain?

17       A:    No, not at all.  I found it interesting in my study
               of commercial packaging.   There's nothing wrong
18             with it.

19   Vol. 4 Trial Trans. at p. 204.

20       Defendant argues that there is no evidence that its systems

21   literally infringe the custom form limitation and that there is a

22   similar failure of evidence to support an infringement verdict

23   based on the doctrine of equivalents regarding this claim

24   limitation.  I agree with defendant that plaintiff presented no

25   relevant doctrine of equivalents evidence regarding the custom form

26   limitation.  I also agree that Dr. Shapiro's testimony set forth

27   above was unrebutted.

28       Nonetheless, I deny the motion on the infringement issue

16 - OPINION & ORDER

1   because I agree with plaintiff that the custom form limitation was
2   resolved on summary judgment and was not litigated at trial.
3   Plaintiff moved for summary judgment on the issue of infringement
4   of claims 1, 9, 10, and 21 of the '278 patent.  In response to the
5   motion, defendant addressed one of its arguments to the custom form
6   limitation of claims 1, 9, and 10.  In the July 7, 2003 Opinion
7   resolving the summary judgment motions, I noted that several of the
8   claims in both the '278 and '042 patents contained a customized
9   form limitation.  July 7, 2003 Op. & Ord. at p. 35.  I noted that
10  while I addressed the claim limitation in the context of claim 1 of
11  the '278 patent, the discussion applied to any claim containing
12  that limitation in either patent.  Id. at n.5.

13      At summary judgment, defendant did not argue that it did not
14  practice the customized form limitation because its systems did not
15  provide unlimited variations in forms, but instead used a template-
16  driven forms interface restricting the customization options.
17  Rather, defendant argued that the custom form limitation  included
18  the concept of transparency.  That is, that the "customized form"
19  or  "customized  application"  term  in  the  patents  should  be
20  interpreted to mean that the application form is "transparent" and
21  contains no references or other indicia that the application is
22  being hosted by the forms service provider.

23      I rejected this interpretation.  Id. at pp. 36-37.  Then, I
24  granted plaintiff's motion for summary judgment on the infringement
25  of claims 1, 9, 10, and 21 of the '278 patent based on defendant's
26  admissions that its systems practiced the custom form limitation.
27  Id. at p. 37 (citing responses to requests for admission 44, 45,
28  52, 53, 64, and 65 which collectively admitted that Flagship and i-

17 - OPINION & ORDER

Class allowed the institution to customize an application form).
I also noted that in its response to plaintiff's concise statement
of fact, defendant had accepted plaintiff's asserted fact that both
of its systems allow a school to customize an application form in
content and appearance, including an indication of source such as
a logo. Id.

I also based my decision on Exhibit F to Dr. Shapiro's expert
report, an exhibit submitted by plaintiff in support of its summary
judgment motion, which analyzed the infringement of claims 1, 9,
10, and 21 of the '278 patent. I noted that except for the
specific elements or functions separately discussed, Exhibit F and
the evidence cited therein, supported plaintiff's motion for
summary judgment as to the literal infringement of claims 1, 9, 10,
and 21 of the '278 patent. Id. at p. 30. Because I rejected the
only challenge defendant made to the "customized form" limitation,
because defendant admitted that both its systems practiced the
limitation, and because Dr. Shapiro's chart demonstrated
infringement of the limitation, I concluded that "defendant
fail[ed] to create a material issue of fact regarding the accused
systems' practice of the 'customized form' limitation[.]" Id. at
p. 37. I then granted plaintiff's summary judgment motion.

During trial, immediately following the testimony from Dr.
Shapiro excerpted above, defendant's counsel asked Dr. Shapiro
whether defendant could produce a customizable form as described in
the patent. Vol. 4 Trial Trans. at pp. 204-05. The question drew
a relevance objection from plaintiff. Id. at p. 205. With the
jury excused, plaintiff argued that the custom form limitation had
been resolved on summary judgment so any testimony about it was not

18 - OPINION & ORDER

relevant at trial.

 After a discussion with counsel, a review of the summary
judgment opinion as well as plaintiff's concise statement of facts
and defendant's response to that statement, and a review of the
relevant admissions made by defendant, I stated that "[w]e tried
the case on the custom data formatting on the back end, not -- not
on the customized application on the front end.  And that's --
that's where it needs to stay."  _Id._ at p. 214.  Accordingly, I
sustained plaintiff's objection and testimony resumed.

 Based on the summary judgment ruling and my comment during
trial, including sustaining plaintiff's relevance objection to
testimony regarding the custom form limitation, there is no basis
upon which to grant defendant a new trial.  The custom form issue
raised by defendant here was decided adversely to defendant in
regard to both patents, on summary judgment.  Defendant did not
seek to reconsider that ruling.  Defendant did not seek to withdraw
these relevant admissions.  The custom form limitation was not an
issue at trial.  The fact that on cross-examination, defendant's
counsel elicited a few statements from Dr. Shapiro before plaintiff
objected to the testimony is not a proper basis upon which to seek
a new trial.  I deny this motion.

                2.   Custom Data Delivery in Claims 6-8, 27
                     of the '278 Patent

 Claims 6 and 27 of the '278 patent contain the phrase "format
specified by the institution" which appears in claims 1, 16, and 32
of the '042 patent and which was construed as part of the summary
judgment motions and then refined before and during trial.  Claim
7 of the '278 patent depends from claim 6 and claim 8 of the '278

19 - OPINION & ORDER

patent depends from claim 7.

Based on the similar language in the '042 patent claims, defendant argues that its arguments regarding non-infringement of the '042 patent should apply to claims 6-8 and 27 of the '278 patent. Defendant contends that the clear weight of the evidence demonstrates that its systems do not provide "unlimited formats" or "mapping" as the patents require.

I do not address the merits of defendant's argument because I am persuaded by plaintiff's argument that a new trial on claims 6-8 and 27 would be inappropriate given that twenty-four of the claims of the '278 patent were found to be infringed by both of defendant's systems, and no claim was found invalid. For damages to be awarded, only one valid claim need be infringed. Thus, even if I concluded that the infringement verdicts on claims 6-8 and 27 of the '278 patent were against the clear weight of the evidence, the damages awarded on the '278 patent would still stand.

The verdict form did not ask the jury to award separate damages for each claim of the '278 patent. Defendant did not object to the verdict form's lack of segregation. During oral argument, defendant suggested that depending on how the Federal Circuit resolves several of the issues that will be appealed by either party, the lack of evidence to support the infringement verdict on claims 6-8 and 27 of the '278 patent could matter and impact the '278 patent infringement damages award. Even if I accept defendant's position, it does not change the fact that defendant failed to object to the verdict form which had only one damages question for lost profits and one for reasonable royalties for the collective infringed, valid claims of the '278 patent. It

20 - OPINION & ORDER

1  is an inefficient use of judicial resources for me to resolve the

2  issues surrounding this unsegregated verdict.  If an action by the

3  Federal Circuit on appeal requires a re-examination of the claims

4  at issue in this motion (for example, because those claims end up

5  being the only infringed and valid claims in the '278 patent), the

6  Federal Circuit can order a new trial on those claims at that time.

7      B.  Willfulness

8      The jury found, by clear and convincing evidence, that the

9  infringement of the '278 patent was willful.  The jury instruction

10  on this issue provided as follows:

11      Plaintiff alleges that defendant willfully infringed
       the '278 patent.  You are to consider this contention
12     only if you have found infringement of any of the claims
       of the '278 patent that plaintiff alleges is infringed in
13     this litigation, under any of plaintiff's infringement
       theories.

14
       To prove willful infringement, plaintiff must show that:
15     (1)  Defendant had actual knowledge of the '278
            patent; and
16     (2)  Defendant had no reasonable basis for believing
            (a)  that defendant's system or method
17               did not infringe the '278 patent or
            (b)  that the '278 patent was invalid.

18
       In deciding whether defendant committed willful
19     infringement, you must consider all of the facts, which
       include, but are not limited to:
20     (1)  Whether  defendant  intentionally  copied  a
            product  of  plaintiff  covered  by  the  '278
21          patent;
22     (2)  Whether defendant, when it knew of plaintiff's
            patent protection, investigated the scope of the
23          patent and formed a good-faith belief that the
            patent was invalid or that it was not infringed;
24     (3)  Whether defendant made a good faith effort to avoid
            infringing the patent; and
25     (4)  Whether defendant relied on a legal opinion
            that appeared to it to be well-supported and
26          believable and that advised defendant (a) that
            the product or method did not infringe the
27          '278 patent or (b) that the '278 patent was
            invalid.
28

21 - OPINION & ORDER

1   Jury Instructions at pp. 23-24.

2       The instruction adequately summarized the law for the jury.

3   Defendant argues that it presented abundant evidence of good faith

4   that the '278 patent was invalid or not infringed.    Plaintiff

5   contends that the jury's willfulness decision is adequately

6   supported by the evidence.

7       The evidence cited by defendant in support of its motion

8   includes:

9
10          (a)  Len Metheny's testimony that he viewed notice

11  of the patent and filing of suit against his company seriously;

12  Vol. 4. Trial Trans. at pp. 231, 233;

13          (b)  Metheny's testimony of defendant's actions and

14  research after receipt of notice of the lawsuit which led him to

15  form a good faith belief that defendant did not infringe the '278

16  patent and that the '278 patent was invalid since its technology

17  was in the prior art; Vol. 5 Trial Trans. at pp. 127-29;

18          (c)  the fact that defendant sought preemptive relief

19  via a declaratory judgment action directed at invalidity and non-

20  infringement;

21          (d)  the fact that defendant mounted a reasonable and

22  vigorous challenge to validity and infringement throughout the

23  trial;

24
25          (e)  the fact that defendant has respected the

26  Court's rulings and has diligently complied with any adverse

27  rulings, including that as soon as the Markman opinion issued on

28  the '278 patent in December 2002, defendant turned off its data

22 - OPINION & ORDER

sharing feature; and

(f) the lack of evidence of deliberate copying as indicated by testimony of Noblestar employees denying copying, and defendant's witnesses' testimony indicating that defendant was not attempting to steal plaintiff's technology, that i-Class was developed without reference to plaintiff's products, and that defendant lacked awareness of specific features of plaintiff's products during development.

In opposition, plaintiff notes the following:

(a) the lack of any legal opinion offered by defendant;

(b) a July 2000 e-mail from Metheny indicating that a potential client institution had chosen plaintiff over defendant and stating that "CollegeNET has been hurting us quite a bit lately with a number of ideas, and they do not have anything different about their system . . . they have just learned how to sell against us, and we are not responding.  Take the gloves off, folks.  We are gonna gear up and kick the #%@&^$ out [of] those Portland folks." Exh. 27;

(c) an April 17, 2002 e-mail from one of defendant's employees in which he lists a number of "web-based apps" that he "follows" and noting that they "all seem to be infringing on the CollegeNet patent."  Exh. 56;

(d) Metheny's testimony that he did not learn how to understand the patent claim, or about infringement theories, or what it meant to invalidate a patent in terms of opening up legal

23 - OPINION & ORDER

books and reading;  Vol. 5 Trial Trans. at p. 137;

   (e)  defendant's touting of its automatic data sharing feature of its products in its company profile to secure the University of Indiana's business; Exhs. 70, 73.

   (f)  the fact that defendant did not approach plaintiff during litigation with a licensing agreement proposal;

   (g)  the fact that defendant had a strong incentive to infringe given the fierce competition in the on-line application market; and

   (h)  Metheny's testimony that when he was copied on a March 25, 2002 e-mail indicating that plaintiff had been granted a patent for its universal forms engine, he could have read plaintiff's press release which was an attachment to that e-mail, and learned about the patent, but he did not because he did not "pursue it."  Vol. 4 Trial Trans. at pp. 231-33.

 This recitation of the evidence relied on by both parties shows that the evidence is mixed with some evidence supporting good faith and other evidence capable of suggesting that defendant's infringement of the '278 patent was willful.  Where the evidence is equivocal and the jury could have reasonably interpreted it in support of a willfulness determination, defendant fails to show that the verdict is against the great weight of the evidence.  I deny this part of defendant's new trial motion.

 C.  Jury Misconduct

 At the end of the day on September 9, 2003, the jury informed the bailiff that it had reached a verdict.  I determined that it

would be best to receive the verdict the following morning given the late hour of the day and my anticipation that polling the jury could take some time.  Before receiving the verdict on the morning of September 10, 2003, defendant moved for a mistrial based on jury misconduct.  Defendant's motion was based on a series of jury notes received during the jury's deliberations, including one that was received after the jury had announced that it had reached a verdict.  The motion was also based on the fact that during deliberations, one juror had left the jury room in tears because she had become so upset during the deliberations.  That same morning I denied defendant's motion for reasons stated on the record.

Defendant now cites the same evidence and makes the same arguments in support of its new trial motion based on jury misconduct.  I deny the motion for the reasons articulated orally on the record the morning of September 10, 2003.

D.  Incomplete Transcript

At the October 27, 2003 hearing on plaintiff's motion to strike defendant's JMOL motions, defendant orally moved for a new trial based on an allegedly incomplete transcript.  I denied the motion in the October 28, 2003 Opinion resolving plaintiff's motion to strike.  For the reasons articulated in that Opinion, I deny this renewed motion for new trial based on an incomplete transcript.

V.  Plaintiff's Motion to Amend Judgment and Award Enhanced Damages

Pursuant to 35 U.S.C. § 284, plaintiff moves for an award of enhanced damages on its claim for infringement of the '278 patent.

25 - OPINION & ORDER

Plaintiff seeks a tripling of the award from $181,000 to $543,000.
Pursuant to Rule 59(e), plaintiff seeks an amendment of the
judgment to reflect the enhanced award.

The damages statute governing patent cases provides:

Upon finding for the claimant the court shall award
the claimant damages adequate to compensate for the
infringement, but in no event less than a reasonable
royalty for the use made of the invention by the
infringer, together with interest and costs as fixed by
the court.

When the damages are not found by a jury, the court
shall assess them. In either event the court may
increase the damages up to three times the amount found
or assessed. Increased damages under this paragraph
shall not apply to provisional rights under section
154(d) of this title.

The court may receive expert testimony as an aid to
the determination of damages or of what royalty would be
reasonable under the circumstances.

35 U.S.C. § 284 (emphasis added).

Section 284 does not provide any meaningful standard for
determining when enhanced damages are appropriate, leaving it to
the district court's discretion based on the totality of the
circumstances presented in each individual case. Mentor H/S, Inc.
v. Medical Device Alliance, Inc., 244 F.3d 1365, 1380 (Fed. Cir.
2001). The court's paramount consideration is the egregiousness of
the defendant's conduct. Electro Scientific Indus., Inc. v.
General Scanning, Inc., 247 F.3d 1341, 1353 (Fed. Cir. 2001).

The Federal Circuit has approved of a two-step inquiry.
Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996). "First,
the fact-finder must determine whether an infringer is guilty of
conduct upon which increased damages may be based. If so, the

26 - OPINION & ORDER

court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." Id.

The requisite conduct for imposing enhanced damages must include some degree of culpability. Id. While a jury's finding of willful infringement satisfies the requirement for enhanced damages, id., "a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992).

To assist the district court in determining whether enhanced damages are appropriate, the Federal Circuit has established nine factors which are to be considered: (1) whether the infringer deliberately copied the ideas or designs of the patentee; (2) whether the infringer knew of the other's patent, investigated the scope of the patent, and formed a good-faith belief that the patent was invalid or that it was not infringed; (3) the infringer's behavior as a party during the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's conduct; (7) any remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. Read Corp., 970 F.2d at 827. This test is designed to assist the district court in evaluating the infringer's conduct and provides both aggravating and mitigating factors. See id. at 826.

Because I have denied defendant's new trial motion directed at the willfulness verdict, the requisite culpability under the Federal Circuit's first inquiry has been established. What remains

27 - OPINION & ORDER

is an evaluation of the nine Read factors to determine whether an enhanced award is appropriate, and if so to what extent, under the totality of the circumstances.

A.  Deliberate Copying

While evidence in the record supports a finding of willfulness, I agree with defendant that there is little or no evidence suggesting that defendant deliberately copied the '278 patent.  This factor weighs against an award of enhanced damages.

B.  Knowledge, Investigation, and Good-Faith Belief

Here, the evidence cited above in connection with defendant's new trial motion directed at the willfulness verdict, is capable of supporting a determination that defendant knew of the patented technology and failed to conduct a reasonable or thorough investigation into the validity and infringement claims and thus, had an inadequate basis upon which to form a good-faith belief that the patent was invalid or not infringed.  This factor weighs in favor of an award of enhanced damages.

C.  Infringer's Behavior During Litigation

Plaintiff cites several acts which it alleges demonstrate that defendant acted poorly during the litigation.  Among other things, plaintiff points to (1) a May 23, 2003 e-mail from Metheny to defendant's college customers which plaintiff alleges was misleading; (2) defendant's attempts to seal the summary judgment opinion; (3) an allegedly misleading post-verdict press release issued by defendant; (4) alleged missed court deadlines; (5) defendant's seeking leave to supplement the summary judgment record

28 - OPINION & ORDER

one week before the oral argument on summary judgment motions; (6) defendant's refusal to drop abandoned affirmative defenses prior to trial; and (7) defendant's violation of court orders regarding witness statements.

Defendant notes that this was a hard fought case. Defendant further contends that zealous advocacy, genuine debate, and honest disagreement should not be viewed as synonymous with "bad behavior."

I agree with defendant's assessment. I do not view any of these listed actions of defendant's as indicative of the appropriateness of an enhanced damages award. While other parties may have handled themselves differently, and while all of defendant's conduct was not desirable, I cannot conclude that any of it fell outside the range of conduct seen in the context of hard fought litigation with each party's survival at stake. This factor is neutral, neither favoring nor disfavoring an award of enhanced damages.

D. Defendant's Size and Financial Condition

Defendant is a small company. Even though defendant no longer has a $1.2 million money judgment against it, the trial evidence revealed that defendant does not make a profit. Post-trial motions regarding a stay of execution of the Judgment showed that defendant's financial picture is somewhat uncertain. Defendant operates in a very competitive market and it will still be litigating this case in the appellate court for the foreseeable future. This factor weighs against an award of enhanced damages.

/ / /

29 - OPINION & ORDER

E.   Closeness of the Case

Plaintiff prevailed at summary judgment as to the literal infringement of four claims of the '278 patent. Aside from that victory, however, I view the case as having presented close questions of infringement and validity as to the '278 patent. This factor weighs against an award of enhanced damages.

F.   Duration of the Infringer's Conduct

The '278 patent issued in February 2002. Plaintiff initiated the lawsuit in April 2002. The claim construction opinion was issued in December 2002. Within days of the issuance of the claim construction opinion, defendant voluntarily turned off the infringing automatic data sharing feature. Thus, the period of infringement was limited to eight or nine months.

Plaintiff maintains that it should not be penalized for having filed suit so soon after the '278 patent issued. While I do not agree with plaintiff's use of the word "penalty," the fact remains that plaintiff's decision to sue defendant almost immediately after issuance of the patent, coupled with defendant's voluntary cessation of infringing activity days after the claim construction on the '278 patent was rendered, produces a short period of infringement. This factor weighs against an award of enhanced damages.

G.   Remedial Action

As noted, defendant voluntarily ceased its infringing activity shortly after the claim construction opinion issued. This factor weighs against an award of enhance damages.

30 - OPINION & ORDER

1

       H.   Defendant's Motivation for Harm

2

       Plaintiff argues that defendant had a strong incentive to

3

infringe given the undisputed trial evidence that competition for

4

this type of product is fierce and the initial contract often

5

translates into a long-term commitment.   Plaintiff also suggests

6

that in attempting to win and maintain clients, defendant promoted

7

its product features, including infringing features.   In support of

8

this argument plaintiff again cites to Exhibits 70 and 73.

9

       Exhibit 73 is a proposal by defendant to the University of

10

Indiana.   The date on the proposal is April 2001, before the patent

11

issued.   Thus, defendant was not promoting an infringing feature at

12

that point because no patent protected plaintiff's propriety in

13

that feature.   The same goes for Exhibit 70.   This is defendant's

14

company profile in which defendant allegedly touts its automatic

15

data sharing feature.   But, the exhibit is undated and to my

16

recollection, there was no trial testimony establishing a date for

17

this document.   This, as it stands, it does not demonstrate

18

defendant's motivation for harm because the document may have been

19

issued before the patent.   I fail to see how documents drafted

20

before the patent issued demonstrate defendant's deliberate

21

marketing of an infringing feature.

22

       I agree with plaintiff that the evidence shows a very

23

competitive industry with a focus on being the first to win a

24

client's business.   This provides some motivation for defendant to

25

harm plaintiff.   However, I disagree with plaintiff that the

26

evidence shows defendant's continued deliberate touting of its

27

infringing product into the infringement period.   Accordingly, this

28

31 - OPINION & ORDER

factor is neutral - neither favoring nor disfavoring an award of enhanced damages.

I.  Concealing Misconduct

Plaintiff argues that defendant acted deceptively in dealing with the marketplace regarding both pre- and post-verdict publicity of the dispute, the rulings, and the verdict.  Plaintiff first points to Exhibit 59, the May 2003 e-mail sent by Metheny to defendant's clients regarding plaintiff's allegedly "overly-broad" patent and the fact that defendant filed a suit challenging the validity of the patent.  Metheny further asserted that left challenged, the patent "could seriously limit your choices and ultimately be harmful to any college or university wishing to process even its own applications on the Web."  Exh. 59.

Plaintiff also notes that defendant successfully moved to seal the summary judgment opinion.  Additionally, plaintiff points to an allegedly misleading press release issued by defendant after the September 10, 2003 verdict.  Exh. A to Pltf's Memo. in Support of Motion re: Enhanced Damages.

The press release indicates that defendant will file post-trial motions asking the Court to vacate the decision and to reduce the damages.  It also noted that there were "indications that there were some egregious irregularities in the jury deliberation process that prevented this from being a fair trial."  Id.  It further noted that whatever the outcome of the post-trial motions, the verdict would not have a significant impact on defendant because it already removed from its products one infringing feature and additional "modest" modifications  or "judicial recognition of

32 - OPINION & ORDER

existing    system    distinctions"    would    alleviate    continuing
infringement concerns.    Id.

I agree with plaintiff that Metheny's May 2003 e-mail was
somewhat misleading in two respects:  first, because it described
defendant's    declaratory    judgment    action    without    mentioning
plaintiff's pending infringement action against defendant, and
second, because it suggested that left unchallenged, plaintiff may
initiate infringement litigation against colleges and universities
with in-house online admissions programs.

I reject plaintiff's contention that defendant's seeking to
seal the summary judgment opinion and its post-verdict press
release were designed to conceal any misconduct.  As defendant
notes, it sought to seal the summary judgment opinion because the
opinion described a product made by a third party, XAP Corporation,
who had supplied sensitive information to defendant for purposes of
defendant's invalidity argument.  I accept this representation.

Furthermore, I find nothing in the post-verdict press release
to be misleading.  The press release accurately noted that
defendant would file post-trial motions.  It attempted to assuage
defendant's client's reasonable concerns regarding infringement by
noting that defendant already had stopped infringement of one
patent and that it would make a modification to prevent continued
infringement of the other.  These are not misleading statements.

Defendant also indicated that it expected that "judicial
recognition of existing system distinctions" would eliminate any
ongoing infringement concern. Defendant's expectation was realized
with the granting of its JMOL on the issue of non-infringement of

33 - OPINION & ORDER

the '042 patent.  As to the press release's mention of the jury deliberations, while the appellate court will ultimately decide if this was an overstatement in its reference to a "fair trial," the note it referred to is in the public record and defendant was not prohibited from quoting from it.

Because of the May 2003 e-mail from Metheny, this factor supports an award for enhanced damages.  But, the support is limited in that the other acts cited by plaintiff do not show that defendant attempted to conceal its misconduct.

On balance, an assessment of the <u>Read</u> factors cautions against an award of enhanced damages.  Five of the factors weigh against an award.  Two factors weigh in favor of an award, and one of those carries limited support.  Two factors are neutral.  While the majority of the factors weighs against an award, I recognize the weight attached to the willfulness finding by the jury which I have concluded was adequately supported at trial.  Based on this and on my view of the <u>Read</u> factors and the entire record, I conclude that an enhancement of ten-percent of the $181,000 jury verdict on the '278 patent, is appropriate.  Accordingly, I grant in part plaintiff's motion to amend the Judgment to include an award of enhanced damages in the sum of $18,100.

VI.  Plaintiff's Motion to Deem Defendant's Dismissal of '042 Invalidity Claims to be With Prejudice

During the trial on September 3, 2003, after defendant had rested its case, but before plaintiff had put on its rebuttal case, defendant indicated that it wanted to make various oral JMOL motions and that it sought dismissal of its invalidity

34 - OPINION & ORDER

counterclaims and affirmative defenses raised as to the '042 patent.  Vol. 6 Trial Trans. at pp. 89, 93, 96.  Plaintiff also indicated that it had one oral JMOL motion it wanted to make at that time which was directed to defendant's "written description" argument, and that it intended to present the remainder of its JMOL motions in writing later in the day.  Id. at pp. 89-90.

Following a lunch recess, I heard the oral motions.  I agreed to hear defendant's motions first because plaintiff's case was the first to conclude.  Id. at p. 100.  Defendant then moved to dismiss the invalidity counterclaims and affirmative defenses pursuant to Federal Rule of Civil Procedure 41.  Id. at p. 101.  Defendant indicated that it wanted the invalidity counterclaims and affirmative defenses dismissed without prejudice.  Id.  The basis of the motion was the claim construction regarding custom formatting data and data delivery.  Id.

Plaintiff did not oppose the dismissal of the counterclaims or the affirmative defenses.  Plaintiff did, however, oppose the dismissal being without prejudice.  I declined to resolve the "with or without" prejudice issue at the time given the press of trial.  At that time, what was most important was whether the '042 invalidity counterclaims and affirmative defenses were in or out of the trial.  The parties agreed that they were out.  Plaintiff now moves to resolve the undecided issue and seeks to have the dismissal of the '042 invalidity counterclaims and affirmative defenses deemed to be with prejudice.

Defendant's dismissal motion should have been made under Rule 15 rather than Rule 41.  See General Signal Corp. v. MCI Telcomms.

35 - OPINION & ORDER

Corp., 66 F.3d 1500, 1513 (9th Cir. 1995) (explaining that "Rule 15, not Rule 41, governs the situation when a party dismisses some, but not all, of its claims."). Thus, Rule 15(a) is the controlling rule, although the distinction is relatively immaterial. See Nilssen v. Motorola, Inc., 203 F.3d 782, 784-85 (Fed. Cir. 2000) (noting that while a voluntary dismissal of one of several claims is properly labeled an amendment under Rule 15(a) and not a dismissal under Rule 41(a), the distinction is technical, not substantive); Wilson v. Crouse-Hinds Co., 556 F.2d 870, 873 (8th Cir. 1977) (suggesting that it is immaterial whether a court acts pursuant to Rule 15(a) or Rule 41(a)(2)).

Plaintiff argues that the great weight of authority mandates that when an amendment of the pleadings dropping fewer than all claims is allowed late in the proceedings, an appropriate condition for dismissal is that the dismissal be with prejudice. Plaintiff contends that dismissal with prejudice is appropriate here because over the course of the litigation, significant resources were devoted to litigating the validity of the '042 patent. Then, defendant rested its case, having presented no evidence of invalidity during trial.

Plaintiff argues that it would have been entitled to JMOL on the '042 invalidity contentions had defendant not sought to withdraw the counterclaims and invalidity defenses at the last minute. Plaintiff suggests that since at least July 7, 2003, when the summary judgment opinion containing the '042 claim constructions was issued, defendant was aware of the claim construction on which it relied in support of its motion to dismiss

36 - OPINION & ORDER

the invalidity counterclaims and affirmative defenses. Plaintiff suggests that defendant's decision to wait from July 7, 2003, until the end of trial to drop these counterclaims and defenses is a tactic that should not be condoned with a "without prejudice" ruling.

In response, defendant notes that while the claim construction regarding the '042 patent was issued on July 7, 2003, it remained in flux until September 3, 2003, due to plaintiff's continued pursuit of reconsideration, first in a formal written motion for reconsideration which was argued on August 20, 2003, and then at various times during the trial. Defendant correctly notes that I did not foreclose plaintiff from rearguing the claim construction issue.

I agree with defendant that the cases cited by plaintiff in its memorandum are by and large distinguishable because the parties in those cases had greater control over the timing of their motions than defendant had in the instant case. Here, the relevant claim construction was not final until September 3, 2003, largely because of plaintiff's determination to change it and my indulging plaintiff's attempts. While the final September 3, 2003 claim construction was not substantively different than what was issued in the July 7, 2003 Opinion, defendant's decision to wait until the claim construction was final, or nearly so, to dismiss the '042 invalidity counterclaims and affirmative defenses was not unreasonable.

Furthermore, I reject plaintiff's argument that it is prejudiced by a "without prejudice" dismissal because it expended

37 - OPINION & ORDER

substantial resources litigating the '042 invalidity claims only to have defendant drop them at the end of the case. First, since defendant's abandonment of its '042 invalidity claims and defenses was based on the claim construction initially articulated in the July 7, 2003 Opinion resolving the summary judgment motions, all of the time and effort plaintiff spent on those claims and defenses before that date is properly viewed as part of the typical resources expended in litigation.

Second, plaintiff fails to identify how any of the resources it expended were specific to the '042 patent. Defendant still asserted its invalidity arguments vis a vis the '278 patent. Other than a question or two directed to Allen Firstenberg and Frank Tansey about the number of formats provided by XAP's product, I see nothing in plaintiff's pretrial documents, trial exhibits, or other evidence adduced at trial that would have been obviated by an earlier dismissal of defendant's '042 invalidity arguments.

Thus, the only prejudice plaintiff faces is the possibility of another lawsuit, or the relitigation of this one if it is remanded after appeal, in which these invalidity challenges may be mounted. However, the mere prospect of having to relitigate a claim is not sufficient prejudice to deem the withdrawal of the counterclaims and affirmative defenses to be with prejudice. Mechmetals Corp. v. Telex Computer Prods., Inc., 709 F.2d 1287, 1293-94 (9th Cir. 1983).

Finally, plaintiff's reliance on Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553 (Fed. Cir. 1995) is unavailing. There, the plaintiff failed to anticipate that the claim

38 - OPINION & ORDER

construction could change and thus failed to present evidence in support of a claim of literal infringement based on an alternative claim construction. On appeal, the Federal Circuit noted that the record contained insufficient evidence of literal infringement under the Federal Court's claim construction because the plaintiff patentee had not attempted to prove at trial the additional facts required by the defendant's proffered claim construction or the construction adopted by the appellate court. Id. at 1561.

Rather than send the case back for trial on that issue, however, the court determined that no new trial was appropriate because the plaintiff had known before trial that the claim construction advanced by the defendant would require the plaintiff to prove at least the additional facts ultimately required by the Federal Circuit's claim construction. Id. at 1560-61. The court noted that the trial judge did not interpret the claims until all the evidence was in, just before the claim was submitted to the jury. Id. Nonetheless, the plaintiff chose not to present evidence of the additional facts required to show literal infringement under the differing claim construction. Id. As such, the court concluded that "Exxon cannot now claim surprise from our variation on Lubrizol's claim meaning and cry foul in not having a second chance to prove what it was free to prove at trial." Id.

Plaintiff contends that Exxon should control the analysis here. Plaintiff notes that the issues seen in Exxon and present here are closely related as proving infringement under a changed, narrower claim construction is analogous to proving invalidity under a changed, broader claim construction because each may be

39 - OPINION & ORDER

1  proved with additional evidence that otherwise may not be
2  necessary.

3      While I agree that the scenarios are similar, there is one
4  important distinction.  In <u>Exxon</u>, the plaintiff put on evidence
5  according to its theory and completely ignored the defendant's
6  theory.  By putting on its own case while ignoring the other side's
7  theory, it risked being foreclosed from pursuing a different theory
8  upon remand after appeal.  Because the literal infringement issue
9  was actually litigated, it was incumbent upon the plaintiff to
10 proffer evidence in support of its literal infringement claim
11 regardless of the claim construction ultimately adopted.

12     In contrast, defendant in the instant case chose not to
13 litigate the '042 invalidity counterclaims and affirmative defenses
14 at all.  Rather than litigating the issue based on "Theory X" while
15 risking the later pursuit of the issue based on "Theory Y,"
16 defendant here simply abandoned the claims.  <u>Exxon</u> is
17 distinguishable on this basis.

18
19     Given that the timing of defendant's dismissal of the '042
20 invalidity counterclaims and affirmative defenses was reasonable
21 and given the lack of significant prejudice to plaintiff, I deem
22 the dismissal of the counterclaims and affirmative defenses to be
23 without prejudice.  I deny plaintiff's motion.

24                              CONCLUSION

25     Defendant's motion to reconsider the October 28, 2003 ruling
26 on new trials (#411) is granted; defendant's motion to alter
27 judgment or for new trial regarding Wolfston's expert damages
28 testimony (#387) is denied; defendant's motion for judgment as a

40 - OPINION & ORDER

matter of law, or to alter judgment, or for a new trial regarding price erosion damages (#382) is denied; defendant's motion for new trial as to infringement, willfulness, jury misconduct, and incomplete transcript (#385) is denied; plaintiff's motion to amend the judgment and award enhanced damages (#391) is granted in part and denied in part; and plaintiff's motion to designate the dismissal of the '042 counterclaims and affirmative defenses as with prejudice (#393) is denied.

IT IS SO ORDERED.


Dated this __20th__ day of __January__, 2004



                                    _/s/ Dennis James Hubel_
                                    Dennis James Hubel
                                    United States Magistrate Judge

41 - OPINION & ORDER